UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| SUPERIOR ALUMINUM ALLOYS, LLC, and OMNISOURCE CORPORATION, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES FIRE INSURANCE COMPANY, et al., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) CAUSE NO. 1:05-CV-207 |

## OPINION AND ORDER

### I. INTRODUCTION

Plaintiffs Superior Aluminum Alloys, LLC, and its parent company, OmniSource Corporation (together, referred to herein as "Superior"), operate an aluminum melting plant in New Haven, Indiana. (Compl. ¶¶ 2, 13, 19.) On March 25, 2004, Superior experienced a sudden and unexpected run-out of molten aluminum from one of its furnaces, causing severe damage to the furnace and Superior's surrounding property. (*Id*. ¶ 20.) Superior's insurance claim for the incident, however, was denied. (*Id*. ¶ 26.)

Consequently, Superior brought this suit against its insurer, Defendant United States Fire Insurance Company, and its insurer's parent company, Crum & Forster Holding, Inc. (together, referred to herein as "U.S. Fire"), alleging that they breached U.S. Fire's insurance policy with Superior by failing to cover its claim. (*Id*. ¶¶ 4, 14, 24, 27.) Superior also named its insurance agent, Sky Insurance, Inc. ("Sky"), as a Defendant, alleging that Sky was negligent when it procured an insurance policy for Superior that failed to cover damages arising from a furnace

run-out.[1] (*Id*. ¶¶ 5, 15-16, 37.)

U.S. Fire now moves to strike (Docket # 100) Superior's expert designation of Dr. Kenneth Sandhage, who Superior designated as an expert seven months after the deadline had passed for its disclosure of expert witnesses, and Sandhage's Affidavit, which was filed by Superior in support of its motion to preclude U.S. Fire's designated expert witness, Dr. Robert Carbonara (Docket # 74, 75).[2]  For the reasons provided, U.S. Fire's motion will be GRANTED.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Superior is engaged in the business of acquiring scrap aluminum, melting it, and selling the refined aluminum to customers who use it to manufacture various products, particularly products for use in the automotive industry. (Compl. ¶ 19.)  Superior melts its scrap aluminum in large steel furnaces, one of which is the furnace giving rise to this controversy – Furnace No. 3. (*Id*. ¶¶ 19-20.)

On March 25, 2004, Furnace No. 3 experienced what is referred to in the industry as a "run-out" or "bleed-out." (*Id*.)  In essence, molten aluminum escaped from the furnace causing severe damage to the furnace and Superior's surrounding property. (*Id*.)

Consequently, Superior made a claim for damages under its property and casualty insurance policy issued by its insurer, U.S. Fire. (*Id*. ¶ 25, Exs. A-B.)  On June 29, 2004, after investigation by its expert, Carbonara, U.S. Fire denied Superior's claim for damages from the

---

[1] Accordingly, diversity jurisdiction arises under 28 U.S.C. § 1332(a).  Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

[2] Superior moved to preclude U.S. Fire's proffered expert witness, Dr. Robert Carbonara (Docket # 74), and U.S. Fire and Sky Insurance also moved to bar Superior's designated expert witness, Greg Deimling (Docket # 72, 77).  In addition, U.S. Fire and Sky Insurance each moved for summary judgment. (Docket # 59, 67.)  These motions are addressed by the Court in separate, contemporaneously-entered orders.

run-out, citing a provision of the policy that excludes coverage for losses caused by "wear and tear." (*Id*. at Ex. C.)

In July 2004, Superior retained Sandhage to analyze the brick floor of Furnace No. 3. (Dep. of Dr. Kenneth Sandhage at 30.)  Sandhage visited Superior in December 2004 and in the subsequent months performed an analysis of the bricks. (*Id*. at Ex. 201.)  On April 25, 2005, Sandhage discussed his findings with Superior's counsel, and on June 2, 2005, Sandhage issued his report and supporting materials to him. (*Id*. at Exs. 39, 212.)

On June 21, 2005, Superior filed the instant suit. (Docket # 1.)  The scheduling conference and subsequent motion practice resulted in the following deadlines: (1) August 30, 2006, for Superior's disclosure of expert witnesses; (2) September 30, 2006, for U.S. Fire's disclosure of expert witnesses; (3) February 8, 2007, for all dispositive motions; and (4) February 28, 2007, for completion of discovery and for challenging expert testimony. (Docket # 39, 50.)  In addition, the final pretrial conference is scheduled for July 31, 2007, and a ten-day jury trial is set to begin August 28, 2007. (Docket # 50.)

On October 24, 2005, Superior made its Rule 26(a)(1) disclosures and listed Sandhage as a person who likely has discoverable information relevant to the disputed facts. ([Pls.'] Rule 26(a)(1) Initial Disclosures at 3.)  Superior then amended this disclosure on April 28, 2006, more particularly listing Sandhage as a person who "likely has discoverable information regarding the bricks utilized in the furnace in question." (Pls.' Supplemental Rule 26(a) Disclosures at 3.)  On August 31, 2006, Superior filed its disclosure of expert witnesses, but did not name Sandhage among its three designated experts. (Pls.' Disclosure of Expert Witnesses at 1.)

Approximately one month later, U.S. Fire deposed Sandhage. (Sandhage Dep. at 1.)

3

On October 2, 2006, U.S. Fire disclosed its designated expert witnesses, which included Carbonara. (U.S. Fire's Disclosure of Expert Witnesses at 1.)  Attached to its disclosure was Carbonara's expert report dated September 28, 2006, which stated his opinion that an expansion of the bricks caused the run-out and that he, in part, had relied upon Sandhage's report, together with Sandhage's supporting documents and photographs. (*Id.* at Ex. B.)

On February 7, 2007, U.S. Fire filed a motion for summary judgment. (Docket # 67.) Three weeks later, Superior moved to preclude or limit Carbonara's testimony. (Docket # 74.)  In support of its motion, Superior filed Sandhage's Affidavit, which articulated opinions that were not articulated in Sandhage's June 2, 2005, report. (Aff. of Dr. Kenneth Sandhage ¶¶ 14-16.)

On March 27, 2007, approximately seven months after the expert witness disclosure deadline had passed, five months after Carbonara's report had been disclosed, and one month after the deadline for challenging expert testimony had passed, Superior filed a supplemental disclosure of expert witness, stating that it may call Sandhage as an expert witness and to rebut U.S. Fire's witnesses, specifically Carbonara. (Pls.' Supplemental Disclosure of Expert Witness at 1.)

Consequently, on April 27, 2007, U.S. Fire filed the instant motion, seeking to strike Superior's expert designation of Sandhage and Sandhage's Affidavit. (Docket # 100.)

### III.  APPLICABLE LAW

Federal Rule of Civil Procedure 26 requires a party to disclose the identity of any expert witness it intends to use at trial and to submit a written report prepared and signed by the expert. Fed. R. Civ. P. 26(a)(2); *NutraSweet Co. v. X-L Eng'g Co.*, 227 F.3d 776, 785 (7th Cir. 2000). This disclosure must be made "at the times and in the sequence directed by the court." Fed. R.

4

Civ. P. 26(a)(2)(C).  "The expert witness discovery rules are designed to aid the court in its fact-finding mission by allowing both sides to prepare their case adequately and efficiently and to prevent the tactic of surprise from affecting the outcome of the case." *Spearman Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 138 F. Supp. 2d 1088, 1093-94 (N.D. Ill. 2001) (citing *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000)); *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757 (7th Cir. 2004) ("Formal disclosure of experts is not pointless.  Knowing the identity of the opponent's expert witnesses allows a party to properly prepare for trial.").

      Consequently, Rule 37 provides that a "party without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1).  Thus, "[t]he sanction of exclusion under Rule 37(c)(1) is 'automatic and mandatory unless the party to be sanctioned can show that its violation of Rule 26(a) was either justified or harmless.'" *Mid-Am. Tablewares, Inc. v. Mogi Trading Co., Ltd.*, 100 F.3d 1353, 1363 (7th Cir. 1996) (quoting *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996)).  In making the determination whether a particular violation of Rule 26(a) is justified or harmless, the district court "should consider the surprise or prejudice to the blameless party, the ability of the offender to cure any resulting prejudice, the amount of disruption to the trial that would result from permitting the use of the evidence, and the bad faith involved in not producing the evidence at an earlier date." *Spearman Indus.*, 138 F. Supp. 2d at 1094 (citing *Bronk v. Ineichen*, 54 F.3d 425, 432 (7th Cir. 1995)).

      Notwithstanding the foregoing, the Seventh Circuit Court of Appeals has recognized that in a case "where exclusion necessarily entails dismissal of the case, the sanction 'must be one

5

that a reasonable jurist, apprised of all the circumstances, would have chosen as proportionate to the infraction.'" *Sherrod*, 223 F.3d at 612 (quoting *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 739 (7th Cir. 1998)).  Thus, a district court must "carefully consider Rule 37(c), including the alternate sanctions available, when imposing exclusionary sanctions that are outcome determinative." *Musser*, 356 F.3d at 760.

## IV.  DISCUSSION

U.S. Fire requests that the Court strike Superior's tardy designation of Sandhage as an expert witness and Sandhage's Affidavit, and preclude Superior from relying upon Sandhage's opinions.  U.S. Fire argues that "Superior made a conscious decision not to designate Sandhage as a retained expert witness on August 30, 2006" and thus "cannot circumvent F.R.C.P. 26 and this Court's scheduling order by designating Sandhage some seven months after the imposed deadline, after the close of discovery and [one] month[] after the deadline for filing challenges to experts." (U.S. Fire's Mem. in Supp. of Their Mot. to Strike Pls.' Expert Designation and Aff. of Dr. Kenneth Sandhage ("U.S. Fire's Mem. in Supp.") at 2.)

In response, Superior contends that U.S. Fire has failed to demonstrate that it suffered "any significant prejudice" from Superior's untimely disclosure, as Superior initially disclosed Sandhage in its Rule 26 disclosures, U.S. Fire received Sandhage's report shortly thereafter, and U.S. Fire later deposed Sandhage. (*Id.*)  Superior further emphasizes that there are still several months before trial and that Carbonara specifically relied upon Sandhage's report, making Sandhage's testimony "relevant and admissible for rebuttal purposes." (*Id.*)

Superior's argument, however, mischaracterizes the applicable legal standard.  As articulated *supra*, to avoid the sanction of exclusion Superior bears the burden of showing that its

6

violation of Rule 26(a) was either "justified" or "harmless," *not* that U.S. Fire failed to suffer "significant prejudice" from Superior's tardy disclosure. *See Musser*, 356 F. Supp. 2d at 1094.

Here, Superior makes absolutely no attempt to justify its failure to disclose Sandhage as an expert by the August 30, 2006, deadline for expert witness disclosure. Sandhage's identity and opinions were known to Superior well before this deadline – in fact, even before it commenced this suit. There is no evidence to suggest that Superior's delay was "substantially justified." *See Uhrick v. United States*, No. 1:04-cv-99, 2006 WL 2623285, at *3 (N.D. Ind. Sep. 12, 2006) (excluding plaintiff's proffered expert where the "necessity of expert testimony was known and the identity and opinions of [the expert] were also known to the [p]laintiff well before the deadline for disclosure").

It is also readily apparent that Superior's omission was not harmless to U.S. Fire. Though Superior disclosed Sandhage in its initial Rule 26(a)(1) disclosures as a person likely to have discoverable information regarding the bricks, U.S. Fire "should not be made to assume that each witness disclosed by [Superior] could be an expert witness at trial." *Musser*, 356 F.3d at 757-58.

Disclosing Sandhage as a fact witness and not an expert witness denied U.S. Fire an opportunity to take certain countermeasures "that are not applicable to fact witnesses, such as attempting to disqualify the expert testimony on grounds set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 . . . (1993), retaining rebuttal experts, and holding additional depositions . . . ." *Musser*, 356 F.3d at 757-58. Discovery has closed, and the deadline for challenging expert testimony passed one month *before* Superior designated Sandhage as an expert. *Uhrick*, 2006 WL 2623285, at *4 (concluding that defendant was harmed when plaintiff

designated its expert after the deadline, as defendant had been denied the opportunity to challenge his opinion under Federal Rule of Evidence 702, obtain rebuttal experts, and take depositions).  Furthermore, though U.S. Fire did depose Sandhage, it did not do so with the knowledge that he would be used as an expert witness, which results in prejudice to U.S. Fire.[3] *Musser*, 356 F.3d at 757-58 (acknowledging that a party is prejudiced when it is forced to rely upon a deposition conducted without the knowledge that the witness would be used as an expert).

In response to U.S. Fire's objections, Superior has seemingly retreated a few steps since its March 27, 2007, disclosure of Sandhage as both an expert witness and as a rebuttal expert witness.  In its response brief Superior seemingly retreats to the proposition that, because Carbonara relied upon Sandhage's scientific findings, the Court should permit Sandhage's testimony "for the limited purpose of rebutting the expert opinion of Dr. Carbonara." (Pls.' Mem. in Resp. to Defs.' Mot. to Strike Pls.' Expert Designation ("Pls.' Resp. Br.") at 5.) Nonetheless, this concession adds no merit to Superior's argument.  Again, Superior fails to offer any justification, much less substantial justification, why it waited approximately six months after Carbonara's report was disclosed on October 2, 2006, that is, five months after the deadline for disclosing rebuttal experts, to make this disclosure. *See* Fed. R. Civ. P. 26(a)(2)(C) (articulating that the deadline for rebuttal expert testimony is thirty days after disclosure of the evidence the party wishes to rebut).

---

[3] Though U.S. Fire did receive Sandhage's report shortly after the initial disclosures were made, it was not signed by Sandhage; thus, it failed to comply with the requirements of Rule 26(a)(2)(B). (Sandhage Dep. Ex. 212.) Moreover, when Superior did disclose Sandhage as an expert on March 27, 2007, it failed to attach his report, again violating Rule 26(a)(2)(B). (Pls.' Supplemental Disclosure of Expert Witness at 1.)  Thus, U.S. Fire has never received an expert report from Sandhage that is in compliance with Rule 26.

8

Moreover, the opinions offered by Sandhage in his Affidavit, which was filed in support of Superior's motion to preclude Carbonara, were never addressed in Sandhage's report. (*See* Sandhage Aff. ¶ 15 ("As part of my report, I did not perform a specific analysis of how the chemical reactions between the bricks and the molten aluminum might have impacted the size or volume of the bricks.").)  Thus, U.S. Fire undoubtedly experienced "unfair surprise" when Superior filed Sandhage's Affidavit and was left with no opportunity to rebut these opinions. *Cf. Sherrod*, 223 F.3d at 613 (finding plaintiff's tardy disclosure of expert reports was harmless where plaintiff had disclosed the names of his experts and their initial reports well before the deadline).  Clearly, Sandhage's Affidavit is unequivocally prejudicial to U.S. Fire at this stage of the proceedings.

Moreover, "[t]his is not a case where the disclosure was late by a trivial amount of time." *Musser*, 356 F.3d at 758-59.  Superior designated Sandhage as an expert witness *seven months* after its deadline for disclosure of expert witnesses, *five months* after its deadline for designating rebuttal experts, and *one month* after the deadline for challenging expert testimony.  Summary judgment motions are currently pending, the final pretrial conference is set for less than two months from now, and a ten-day jury trial is scheduled to commence in less than three months.

While we are indeed mindful of the warning from the Seventh Circuit Court of Appeals that "[i]n the normal course of events, justice is dispensed by the hearing of cases on their merits," *id*. (quoting *Salgado*, 150 F.3d at 740), it is also "the court's prerogative--indeed, its duty--to manage its caseload and enforce deadlines," *Finwall v. City of Chicago*, 239 F.R.D. 494, 500-01 (N.D. Ill. 2006) (quoting *Reales v. Consol. Rail Corp*., 84 F.3d 993, 996 (7th Cir. 1996)). "Deadlines such as those envisioned by Rule 26(a)(2)(B) and 37(c)(1) are essential to the

9

maintenance of a smooth and orderly flow of cases." *Id*.  "It is not the right of a party who chooses not to comply with those deadlines to be able to restructure them at will." *Id*.

Furthermore, Superior does not claim that Sandhage's testimony is its sole evidence regarding the causation of the run-out, as it has named three other experts in this case.  Thus, the exclusion of Sandhage as an expert for Superior is ostensibly not "outcome determinative" in this instance. *Musser*, 356 F.3d at 760.

Thus, considering the surprise and prejudice to U.S. Fire, that the time has expired for the curing of such prejudice since the trial is less than three months away, and that Superior seemingly willfully chose not to designate Sandhage by the applicable deadlines, *see Spearman Indus.*, 138 F. Supp. 2d at 1094 (citing *Bronk*, 54 F.3d at 432), it is clear that the sanction of precluding Sandhage from serving as an expert witness for Superior and striking his Affidavit is proportionate to the circumstances presented here. *Musser,* 356 F.3d at 758; *cf. Sherrod*, 223 F.3d at 613 (reversing the exclusion of expert testimony because a trial date had not been set and "appeared a long way off," and there was therefore "no harm" or "unfair surprise" in allowing the testimony).  Consequently, U.S. Fire's motion to strike Superior's expert designation and Sandhage's Affidavit will be GRANTED.[4]

---

[4] In its response brief, Superior posits that if U.S. Fire "successfully challenged the admissibility of Dr. Sandhage's report, the underpinning of Carbonara's report, the domino effect would have necessitated the exclusion of Dr. Carbonara's testimony." (Pls.' Resp. Br. at 5.)  The Court disagrees with this premise.  First, as explained in this Court's Opinion and Order denying Superior's Motion to Preclude or Limit the Testimony of Robert Carbonara, Carbonara's consideration of Sandhage's report was but *a part* of the evidence he relied upon to reach his conclusions.  Second, Superior's failure to timely disclose Sandhage as an expert in compliance with Rule 26 has nothing to do with the reliability of Sandhage's report; in fact, neither party has placed Sandhage's reliability in issue.  Finally, "it is common in technical fields for an expert to base an opinion in part on what a different expert believes on the basis of expert knowledge not possessed by the first expert; and it is apparent from the wording of Rule 703 that there is no *general* requirement that the other expert testify as well." *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002); *United States v. Gardner*, 211 F.3d 1049, 1054 (7th Cir. 2000); *In re James Wilson Assocs.*, 965 F.2d 160, 172 (7th Cir. 1992) (citing Fed. R. Evid. 703) ("An expert is of course permitted to testify to an opinion formed on the basis of information that is handed to rather than developed by him– information of which he lacks first-hand knowledge and which might not be admissible in evidence no matter by

## V.  CONCLUSION

For the foregoing reasons, U.S. Fire's and Crum & Forster's Motion to Strike Plaintiffs' Expert Designation and the Affidavit of Dr. Kenneth Sandhage (Docket # 100) is hereby GRANTED.  Accordingly, Superior's designation of Sandhage as an expert witness and Sandhage's Affidavit are stricken; Superior is barred from relying upon any of Sandhage's opinions; and Superior is precluded from calling Sandhage as an expert witness at trial.

SO ORDERED.

Enter for the 25th day of June, 2007.

S/Roger B. Cosbey<br>
Roger B. Cosbey,<br>
United States Magistrate Judge

---

whom presented.").