**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| **SUPERIOR ALUMINUM ALLOYS, LLC,** ) | |
| and **OMNISOURCE CORPORATION,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | **CAUSE NO. 1:05-CV-207** |
| ) | |
| **UNITED STATES FIRE INSURANCE** ) | |
| **COMPANY, ET AL.,** ) | |
| ) | |
| **Defendants.** ) | |

## OPINION AND ORDER

On March 25, 2004, a sudden and unexpected run-out of molten aluminum occurred in one of the furnaces used in the aluminum melting operations of Plaintiff Superior Aluminum Alloys, LLC.[1] The insurance policy in effect at the time of the run-out was procured for the Plaintiffs by Defendant Sky Insurance, Inc., an insurance agency and brokerage firm. After Defendant United States Fire Insurance Company denied insurance coverage under the policy,[2] the Plaintiffs sued U.S. Fire and Sky, alleging that U.S. Fire breached its insurance policy with Superior by failing to cover its claim and that Sky was negligent in procuring the policy and in advising the Plaintiffs during its procurement.

In separate motions, U.S. Fire and Sky now seek to bar the testimony of Greg Deimling,

---

[1] Superior Aluminum is a single-member limited liability company whose sole member is Plaintiff OmniSource Corporation, a metal scrap manager, broker, and processor. (Dep. of Jennifer Wilson 15-16.) For ease of reference, the Plaintiffs are referred to collectively as "Superior."

[2] Defendant Crum & Forester Holding, Inc. is the parent company of United States Fire Insurance Company; for ease of reference, they will be referred to collectively as "U.S. Fire."

who Superior designated as an expert in the insurance industry.[3] (Docket # 72, 77.) On April 13, 2007, Superior filed a joint response to these motions (Docket # 95), and on April 27, 2007, U.S. Fire replied. (Docket # 100.) Since Sky's time for a reply has passed, the Court will proceed to rule.

For the reasons provided, both motions to exclude the testimony of Deimling will be GRANTED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Deimling graduated with a degree in insurance and has spent the last thirty-five years working in the insurance industry; he currently is a principal in a risk, insurance, and management consulting firm. (Expert Report of Gregory G. Deimling ("Deimling Report") 1; Curriculum Vitae of Gregory G. Deimling ("Deimling CV") 1-2.)  He has worked as an insurance agent and underwriter, has held executive positions at the Globe Insurance Agency of Kentucky, Inc. and Globe Business Services, Inc., is a continuing education instructor in at least two states, and has served as an expert witness in a number of state and federal courts. (Deimling Report 1-2; Deimling CV 2, 6-13.)  Though he is not a licensed insurance adjustor or licensed public insurance adjustor, Deimling claims to have knowledge of insurance adjustment, which he developed by assisting clients during the claims process and by working with adjusters to determine his client's coverage.  (Dep. of Gregory G. Deimling ("Deimling Dep.") 165, 174.)

---

[3] Also pending are Superior's motion to preclude or limit the testimony of U.S. Fire's expert, Robert Carbonara (Docket # 74); U.S. Fire's motion to strike Superior's expert designation and affidavit of Dr. Kenneth Sandhage (Docket # 100); U.S. Fire's motion for summary judgment (Docket # 67); and Sky's motion for summary judgment (Docket # 59). These motions will be addressed by the Court in separate orders.
   In its responses to the pending motions for summary judgment, Superior relies upon the opinions Deimling expresses in his expert report and deposition testimony. Accordingly, the Court construes the current motions to bar Deimling's testimony to include a request to strike this evidence from the record. *See* N.D. Ind. Local Rule 56.1(d).

Deimling, however, has no legal training, and he is not an attorney. (Deimling Dep. 106.) In fact, he acknowledged during his deposition that he has not been retained by Superior to provide any opinions on legal issues in connection with this case. (Deimling Dep. 107.)

As part of his expert witness services to Superior, Deimling issued a written report on August 28, 2006, in which he enumerated the following "professional opinions":

1. Sky Insurance, Inc. is an Ohio insurance agency.

2. Sky Insurance, Inc. through their agents Leslie Talkington and William Fether had a special relationship with OmniSource acting as broker and therefore accepted additional duties and responsibilities over and above those imposed as a sales agent.

3. Sky Insurance Inc. was negligent when asserting that the replacement policies from US Fire would provide coverage for run-out as the previous Zurich policy provided, thus limiting OmniSource['s] ability [to] protect itself from an uninsured loss.

4. Sky Insurance Inc. failed to meet the duties and responsibilities of an insurance agent/broker in the procurement of insurance for OmniSource.

5. Sky Insurance Inc. breached it[]s duties to OmniSource, Inc. during the placement and subsequent denial of coverage within the standard of care commonly found in the property and casualty insurance industry.

6. Sky Insurance, Inc. failed to procure the type of insurance and coverage requested by OmniSource thus causing OmniSource to suffer an uninsured loss[.]

7. Sky Insurance, Inc., knowing the importance of the special risk "run out or bleed out of a furnace," failed to advise OmniSource of the terms and conditions of the coverages being offered and the potential claims posture of U.S. Fire Insurance Company.

8. U.S. Fire Insurance Company failed to adequately investigate and determine the cause of the loss preferring to rely upon a two page report which in essence found "not due to any unusual or extraordinary event or events;" and it then concluded deterioration as the approximate cause of loss.

9. U.S. Fire's denial of all claims was inappropriate when upon further investigation coverage would be applicable under policy # 2441865204.

(Deimling Report 6.) Deimling explained that he based these opinions "upon review of material provided" and his "experience and knowledge of the custom and practice in the insurance industry . . . ." (Deimling Report 5.)

Moreover, Deimling wrote that "[t]he cause of loss is unknown and there is no material presented to support US Fire's conclusion that wear, tear or deterioration was the cause of loss to [the] furnace," reasoning that the furnace was "properly" maintained and cleaned and that there "was no indication of malfunction" or any other operational issues. (Deimling Report 4-5.) In addition, Deimling characterized U.S. Fire's position regarding Superior's insurance claim as "aggressive." (Deimling Report 3.)

In addition, Deimling opined that "[p]art of [Sky's] duties and responsibilities in handling of the [Superior] account would require him to negotiate with the insurance carriers to determine the applicability of coverage. (Deimling Report 3.) He explained: "It is custom and practice for agents/brokers to present potential exposures and claims scenarios to underwriters and claims personnel to establish the insurance carrier's position and generally loss capacity in developing insurance programs for clients that have a special need and relationship with the agent/broker." (Deimling Report 3.)

In forming his opinions, Deimling purportedly relied upon the following materials, which were "furnished by counsel":

1. The complaint and attached exhibits;

2. Answer and Affirmative Defenses to the Complaint for Declaratory Relief and Damages;

3. United States Fire Insurance Company Policy #2441865204 effective 10-01-2003 to 10-01-2004 issued to OmniSource Corporation;

4

    4.  SEA report authored by Dr. Robert S. Carbonara dated May 12, 2004;

    5.  The deposition of Mr. Gary Rohr dated July 27, 2006 including exhibits;

    6.  The deposition[] of Ms. Jennifer Wilson dated June 25, 2006 including exhibits;

    7.  The deposition of Mr. William Dewey dated June 15, 2006 including exhibits;

    8.  Material obtained from the Ohio department of Insurance web site; [and]

    9.  Materials from the web site of Sky Insurance Inc.

(Deimling Report 2-3.)  Deimling, however, did not review the claims file or deposition testimony of U.S. Fire's claims adjuster, did not review any files regarding U.S. Fire's investigation of the run-out, and did not conduct interviews regarding the design, specification, installation, operation, or maintenance of the furnace. (Deimling Dep. at 164-65, 195-96.)

On November 16, 2006, the Defendants deposed Deimling, who reiterated many of the opinions listed *supra*. (Deimling Dep. 74-76, 82-87, 105-12, 114, 116, 120-21, 178, 189, 216, 226-29, 243, 248-53.) In addition, he explained that an insurance broker has the following duties when procuring insurance for the client: (1) follow the instructions of the client; (2) go into the "marketplace" and ask for the specific insurance coverage that the client requests; and (3) report to the client the responses received. (Deimling Dep. 80-81.) Deimling testified that the broker's duty "isn't that he find . . . the coverage. The specific duty is that he . . . attempt to find the coverage and use his requisite skills to communicate what his findings are." (Deimling Dep. 81.) He based these duties on "custom and practice." (Deimling Dep. 81.)

Deimling further testified that Sky's "special relationship" with Superior placed an enhanced duty on Sky to render advice to Superior. (Deimling Dep. 248.) Given Superior's specific request for coverage for molten metal run-out, Deimling opined that Sky had a duty to

5

explain "the exclusionary arena in further depth" and that Sky breached this duty when it stated only that an exclusion for run-out was not included in the policy. (Deimling Dep. 248.)

Moreover, when asked how he arrived at the opinion that U.S. Fire's approach to Superior's claim was "aggressive," Deimling simply responded, "Custom and practice, knowing the market is the basis of that statement." (Deimling Dep. 135.) He added that generally, U.S. Fire is "more aggressive in their claim practices," explaining that this stance "doesn't always result in a denial [of a claim]. Sometimes it results in a payment, but they're very stick on the payment. In other words, they're pretty right by the book. . . . [T]hey're more contractually driven than most . . . ." (Deimling Dep. 138.) Although Deimling does not currently have any clients with U.S. Fire policies, "in the past" he has "[in]directly" been involved with claims also involving U.S. Fire, admitting, however, that an insurance company's approach to claims "changes over time." (Deimling Dep. 139-40, 178.) In fact, he testified that the basis for his characterization of U.S. Fire as "aggressive" is based "merely [on] discussions between . . . professionals." (Deimling Dep. 181.)

In its motion, U.S. Fire requests that the Court bar Deimling from offering any testimony at trial, arguing first that Deimling's opinion that the insurance policy provides coverage constitutes a legal issue that is "solely within the ken of this Court." (Def. United States Fire Ins. Co. and Crum & Forster Holding, Inc.'s Mem. of Law in Supp. of their Mot. to Bar Greg Deimling ("U.S. Fire Br.") 5-8.) It also maintains that Deimling is not qualified to render opinions regarding the cause of the run-out and Superior's maintenance of the furnace. (U.S. Fire Br. 8-9, 10-11.) Furthermore, U.S. Fire contends that Deimling should be precluded from testifying about the adequacy of its investigation and the purported aggressiveness of its claim

6

position because Deimling is not an insurance adjuster and he did not review the adjuster's file and deposition. (U.S. Fire Br. 9-10.)

Sky maintains that opinion numbers two through seven are impermissible legal conclusions and that Deimling is not qualified to render opinions regarding legal issues. (Def. Sky Ins. Inc.'s Br. in Supp. of Its Mot. to Exclude the Test. of Pl.'s Designated Expert Witness, Gregory G. Deimling ("Sky Br.") 5-10.) Sky also argues that Deimling's proffered testimony and opinions "are based upon nothing more than the 'discovery in this case' and his claimed experience in the insurance industry"; therefore, there is "absolutely no way to ascertain the reliability of Deimling's views." (Sky Br. 12.)

Superior asserts that it will not call Deimling "to render opinions regarding whether the Policy provides coverage, the cause and origin of Plaintiffs' insurance claim, the adequacy of U.S. Fire's investigation, or the maintenance of the applicable furnace . . . ."[4] (Pl.'s Resp. to Defs.' Mots. to Exclude Expert Test. of Gregory G. Deimling ("Resp. Br.") 1.) However, it maintains that U.S. Fire's motion must still be denied in part as it pertains to Deimling's opinion that U.S. Fire was "aggressive" in handling Superior's claim. (Resp. Br. 4-8.) Moreover, Superior contends that Sky's motion must be denied in its entirety because Deimling's enumerated opinions are not legal conclusions and because his testimony is relevant to establish the standard of care in the insurance industry and whether Sky's actions complied with that standard. (Resp. Br. 8-12.)

---

[4] Accordingly, the Court will not engage in further discussion concerning these opinions.

## II. LEGAL STANDARD

The admissibility of expert evidence is governed by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

*Daubert* requires a district court to exercise a "gatekeeping" function to ensure that expert testimony is both reliable and relevant pursuant to Rule 702. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999); *see generally Daubert*, 509 U.S. at 589-92; *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 607 (7th Cir. 2006); *Deputy v. Lehman Bros., Inc.*, 345 F.3d 494, 505 (7th Cir. 2003). This inquiry applies not only to scientific testimony, "but to all kinds of expert testimony." *United States v. Conn*, 297 F.3d 548, 555 (7th Cir. 2002) (quoting *Kumho Tire*, 526 U.S. at 149) (noting that Rule 702 "makes no distinction between 'scientific' knowledge and other forms of specialized knowledge"). The fundamental purpose of the gatekeeping requirement "is to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152.

According to the Seventh Circuit Court of Appeals, to gauge reliability, "the court is to determine whether the expert is qualified in the relevant field and . . . examine the methodology

the expert has used in reaching his conclusions." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). When determining whether an expert is qualified to render an opinion, the court should consider his "full range of practical experience as well as academic or technical training . . . ." *United States v. Parra*, 402 F.3d 752, 758 (7th Cir. 2005) (quoting *Smith*, 215 F.3d at 718).

Nevertheless, "[a] court's reliability analysis does not end with its conclusion that an expert is qualified to testify about a given matter . . . . [T]he court's gatekeeping function [also] focuses on an examination of the expert's methodology." *Smith*, 215 F.3d at 718. Accordingly, "[an] expert['s] work is admissible only to the extent it is reasoned, uses the methods of the discipline, and is founded on data. Talking off the cuff–deploying neither data nor analysis–is not an acceptable methodology." *Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 924 (7th Cir. 2000). Specifically, *Daubert* outlined the following factors to guide district courts in assessing an expert's methodology:

> (1) whether a theory or technique . . . can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique or method has met with general acceptance.

*Conn*, 297 F.3d at 555 (quoting *Daubert*, 509 U.S. at 593-94) (internal quotations omitted).

"[A]lthough the fundamental task of the trial court remains the same no matter what sort of specialized information is proffered, the *Daubert* factors set forth above ought not be considered a definitive check list suitable for the evaluation of all kinds of evidentiary submissions involving specialized knowledge." *Id.* at 555-56. Indeed, this list is "neither definitive nor exhaustive, but rather flexible to account for the various types of potentially appropriate expert testimony." *Deputy*, 345 F.3d at 505. "Using the *Daubert* factors as a point of

9

departure, the district court is free to fashion an approach more precisely tailored to an evaluation of the particular evidentiary submission before it." *Conn*, 297 F.3d at 556.

Moreover, when determining whether an expert's testimony is reliable, "[i]t is critical under Rule 702 that there be a link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support." *United States v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003) (citing *Gen. Elec. v. Joiner*, 522 U.S. 136, 146 (1997)). As the Supreme Court wrote: "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec.*, 522 U.S. at 146. Stated another way, an expert "who invokes 'my expertise' rather than analytic strategies widely used by specialists is not an expert as Rule 702 defines that term." *Zenith Elecs. Corp. v. WH-T Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005); *see also Mamah*, 332 F.3d at 478 ("The court is not obligated to admit testimony just because it is given by an expert."). Indeed, the Seventh Circuit has consistently held that "an expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Zenith Elecs. Corp.*, 395 F.3d at 419-20 (collecting cases).

But even if an expert's testimony is deemed reliable, it must be excluded if it is not relevant, which means under Rule 702 that it is not likely "to assist the trier of fact to understand the evidence or determine a fact in issue . . . ." *United States v. Hall*, 93 F.3d 1337, 1342 (7th Cir. 1996); *see also Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 586 (7th Cir. 2000); *Smith*, 215 F.3d at 718. Stated another way, "the suggested . . . testimony must 'fit' the issue to which the expert is testifying." *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002) (quoting *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1106 (7th Cir. 1994)).

### III. DISCUSSION

### A. Deimling's Opinions are Unreliable

Sky argues that Deimling should be precluded from testifying because there is "absolutely no way to ascertain the reliability of [his] views." (Sky Br.12.) Specifically, Sky argues that Deimling's opinions "are based upon nothing more than the 'discovery in this case' and his claimed experience in the insurance industry. As Sky sees it, Deimling failed to rely upon any 'independent authority' . . . to support his opinions." (Sky Br. 12 (citations omitted).) Superior does little to refute this argument, other than to suggest that Deimling's professional experience is enough to deem his testimony reliable. Specifically, Superior asserts that "[i]n cases of nonscientific testimony, the emphasis is placed not on the methodology of the expert, but on the professional and personal experience of the witness."[5] (Resp. Br. 4.)

Indeed, the Advisory Committee's note to Rule 702 provide that "[i]n certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony."[6] Nevertheless, the note also provides that "[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached,

---

[5] In support of this position, Superior cites only one case: *Crowley v. Chait*, 322 F. Supp. 2d 530, 539 (D.N.J. 2004).

[6] The Seventh Circuit quotes this language in four cases deeming testimony reliable based on the expert's experience: *Parra*, 402 F.3d at 758; *United States v. Ceballos*, 302 F.3d 679, 686 (7th Cir. 2002); *Conn*, 297 F.3d at 556; and *United States v. Allen*, 269 F.3d 842, 846 (7th Cir. 2001). These cases are easily distinguished from the case at bar because they concern expert testimony of federal agents or police officers, and as the district court in *Parra* noted, "[T]he Seventh Circuit has been extremely liberal in allowing testimony by police officers and federal agents . . . ." 402 F.3d at 758. Outside of the law enforcement context, however, the Seventh Circuit has found that "[e]xpertise is a necessary but not a sufficient condition of admissibility under Rule 702." *Huey v. United Parcel Serv.*, 165 F.3d 1084, 1087 (7th Cir. 1999); *see also Bourelle v. Crown Equip. Corp.*, 220 F.3d 532, 537 n.11 (7th Cir. 2000); *Smith*, 215 F.3d at 718; *Minasian v. Standard Chartered Bank, PLC*, 109 F.3d 1212, 1216 (7th Cir. 1997) (opining that expert's affidavit "does little beyond demonstrating how vital it is that judges not be deceived by the assertions of experts who offer credentials rather than analysis"); *Am. Int'l Adjustment Co. v. Galvin*, 86 F.3d 1455, 1465 (7th Cir. 1996) (Posner, J., dissenting) (noting that experts rendering nonscientific opinions are "expected to defend [their] conclusions with reasons").

why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 advisory committee's note ("The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'").

Here, Deimling fails to provide an explanation for his opinions in conformance with the framework provided in the Advisory Committee's note; in fact, he furnishes very little analysis to support any of his opinions. For example, Deimling asserts that the specific opinions that Sky challenges, that is, opinion numbers two through seven, are simply based on his "review of material provided" and his "experience and knowledge of the custom and practice in the insurance industry," leaving the Court to wonder what is the industry's "custom and practice" and how Deimling's experience and knowledge informed his opinions.[7] *See Reed*, 2006 WL 1543928, at *2-3 (excluding expert's opinion that was based upon his knowledge and the "usual and customary" practices in the industry because he "does not cite to any authority or describe how he formulated his opinions"). By baldly invoking "my expertise" with no explanation of how this expertise led him to reach his opinions, Deimling fails to provide the Court with any means to assess the reliability of his opinions. *See Zenith Elecs. Corp.*, 395 F.3d at 419 (noting that an expert "who invokes 'my expertise' . . . is not an expert as Rule 702 defines that term . . . .").

Moreover, Deimling's opinions that U.S. Fire is "aggressive" in its claims practices

---

[7] The only time that Deimling mentions "custom and practice" in his expert report is when he writes that "[i]t is custom and practice for agents/brokers to present potential exposures and claims scenarios to underwriters and claims personnel . . . ." (Deimling Report 3.) However, he later admits in his deposition that "a lot" of agents and brokers "don't bother" doing this and that an agent is not required to undertake such an inquiry with an underwriter. (Tr. 127-29.)

12

generally and in its handling of Sky's claim specifically are also not reliable.[8] In that regard, Deimling testified that his characterization of U.S. Fire as "aggressive" is based "merely [on] discussions between . . . professionals." (Deimling Dep. 181.) Such "street gossip" does not provide a reliable basis for an expert opinion. *See Kay v. First Continental Trading, Inc.*, 976 F. Supp. 772, 773 (N.D. Ill. 1997) (ruling that proposed expert would not be permitted "to report on random conversations that he has had with colleagues").

In sum, Superior fails to point to any evidence demonstrating that Deimling's opinions are reliable. *See Bickel v. Pfizer, Inc.*, 431 F. Supp. 2d 918, 921 (N.D. Ind. 2006) ("The burden of showing an expert's testimony to be relevant and reliable is with the proponent of the evidence."); *Cunningham v. Masterwear, Inc.*, No. 1:04-cv-1616-JDT-WTL, 2007 WL 1164832, at *9 (S.D. Ind. Apr. 19, 2007) (deeming expert's report inadmissible because "it is impossible to determine what, if any, methodology he used"). Moreover, Deimling provides no explanatory link between the facts that he reviewed and his opinions, making them inadmissible "bottom lines." *See Zenith Elecs. Corp.*, 395 F.3d at 419-20; *Cunningham*, 2007 WL 1164832, at *2 ("It is not enough for an expert to say this is my data and that is my conclusion without connecting the two.") Accordingly, his testimony at trial will be precluded, and his expert report and deposition testimony will be stricken for purposes of summary judgment.[9] *See* N.D. Ind. Local R. 56.1.

---

[8] Superior asserts that Deimling's opinion that U.S. Fire is known generally for being aggressive is not at issue here because neither U.S. Fire nor Sky specifically challenge it. (Resp. Br. 4.) However, both U.S. Fire and Sky seek to completely bar Deimling from testifying at trial, which would ostensibly include any testimony concerning U.S. Fire's so-called aggressive claims approach. Furthermore, Sky does not attach its attack on Deimling's reliability to any specific opinions; instead, Sky offers a general argument that Deimling is unreliable.

[9] Because the Court deems Deimling's opinions unreliable based upon his lack of explanation, we need not consider the separate attacks that U.S. Fire and Sky make on his qualifications.

## B. Deimling's Opinions are Irrelevant

Even if Deimling's opinions are reliable, Sky maintains that the following opinions are inadmissible legal conclusions:

> 2. Sky Insurance, Inc. through their agents Leslie Talkington and William Fether had a special relationship with OmniSource acting as broker and therefore accepted additional duties and responsibilities over and above those imposed as a sales agent.
>
> 3. Sky Insurance Inc. was negligent when asserting that the replacement policies from US Fire would provide coverage for run-out as the previous Zurich policy provided, thus limiting OmniSource['s] ability [to] protect itself from an uninsured loss.
>
> 4. Sky Insurance Inc. failed to meet the duties and responsibilities of an insurance agent/broker in the procurement of insurance for OmniSource.
>
> 5. Sky Insurance Inc. breached it[]s duties to OmniSource, Inc. during the placement and subsequent denial of coverage within the standard of care commonly found in the property and casualty insurance industry.
>
> 6. Sky Insurance, Inc. failed to procure the type of insurance and coverage requested by OmniSource thus causing OmniSource to suffer an uninsured loss[.]
>
> 7. Sky Insurance, Inc., knowing the importance of the special risk "run out or bleed out of a furnace," failed to advise OmniSource of the terms and conditions of the coverages being offered and the potential claims posture of U.S. Fire Insurance Company.

Federal Rule of Evidence 704(a) provides that "testimony in the form of an opinion . . . otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." This rule, however, does not declare that all opinions concerning ultimate issues are admissible; instead, "[i]t simply provides that if [the opinion] is 'otherwise admissible,' the fact that [it] embraces an ultimate issue does not make it objectionable." *Richman v. Sheahan*, 415 F. Supp. 2d 929, 944 n.14 (N.D. Ill. 2006); *see also* Fed. R. Evid. 704 advisory committee's note. Accordingly, such opinion testimony is not admissible if it violates

14

any of the Federal Rules of Evidence. *See* 29 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure: Federal Rules of Evidence* § 6284 (2007).

For example, opinions regarding ultimate issues are inadmissible if they do not "assist the trier of fact" pursuant to Rule 702. Fed. R. Evid. 704 advisory committee's note; *Richman*, 415 F. Supp. 2d at 944 n.14. In that regard, opinions that amount to legal conclusions are deemed not to assist the trier of fact because they "merely tell the jury what result to reach . . . ." Fed. R. Evid. 704 advisory committee's note; *see also Good Shepherd Manor Found. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003) ("[E]xpert testimony as to legal conclusions that will determine the outcome of the case is inadmissible."); *United States v. McIver*, 470 F.3d 550, 561-62 (4th Cir. 2006) ("[Q]uestions of fact that are committed to resolution by the jury are the proper subject of opinion testimony. However, opinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible.") (internal citation omitted); 4 *Weinstein's Federal Evidence* § 704.04[2][a] (Joseph M. McLaughlin, ed., 2d ed. 2001) ("[Legal conclusions] suppl[y] the jury with no information other than the witness's view of how the verdict should read.").

Moreover, experts are not permitted "to render an opinion as to questions which are matters of law for the court . . . ." 2 Michael H. Graham, *Handbook of Federal Evidence* § 704.1 (5th ed. 2001); *see also Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3rd Cir. 2004) (finding that an expert's testimony pertained to a "question of law to be decided by the court as a matter of law, rather than by expert opinion") (internal citation omitted); *Aguilar v. Int'l Longshoremen's Union Local # 10*, 966 F.2d 443, 447 (9th Cir. 1992) (noting that "matters of law for the court's determination . . . [are] inappropriate subjects for expert testimony").

"Because the jury does not decide such pure questions of law, such testimony is not helpful to the jury and so does not fall within the literal terms of Fed. R. Evid. 702 . . . ." *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 93, 100 (1st Cir. 1997).

Opinion number two, in which Deimling opined that Sky had a "special relationship" with OmniSource and therefore accepted "additional duties" is clearly an inadmissible legal conclusion. To briefly explain, under Indiana law, "[a]n insurance agent who undertakes to procure insurance for another is an agent of the insured and owes the insured a general duty to exercise reasonable care, skill and good faith diligence in obtaining insurance." *See, e.g.*, *Court View Centre, L.L.C. v. Witt*, 753 N.E.2d 75, 87 (Ind. Ct. App. 2001). However, if a "special relationship" exists between the insured and the agent, the agent's duty extends to the provision of advice, and "[w]hether an insurance agent owes the insured [this] duty to advise is . . . a question of law for the court." *Am. Family Mut. Ins. Co. v. Dye*, 634 N.E.2d 844, 848 (Ind. Ct. App. 1994); *see also id.*

Accordingly, whether Sky and OmniSource enjoyed a "special relationship" that imposed upon Sky an enhanced duty to advise is a matter for the Court, and not Deimling, to decide; therefore, Deimling's opinion on the matter is inadmissible. *See Paul Revere Life Ins. Co. v. Wilner*, 230 F.3d 1359 (6th Cir. 2000) (precluding expert from testifying that a "special relationship" existed between an agent and the insured because this opinion was a legal conclusion); *see generally* 13 Robert Lowell Miller, Jr., *Indiana Practice Series: Indiana Evidence* § 704.206 (2d ed. 2006) ("[A]n opinion as to whether a duty existed with respect to a party's conduct is a legal conclusion on which opinion testimony should not be allowed."); 4 *Weinstein's Federal Evidence*, *supra*, § 704.04[1] (noting that expert testimony regarding the

16

existence of a legal duty is generally inadmissible).

In addition, opinion number three, in which Deimling opines that Sky was "negligent," is also clearly an inadmissible legal conclusion, as it would merely tell the jury which result to reach. Indeed, expert opinions that proclaim that a party is negligent are generally inadmissible. *See Shahid v. City of Detroit*, 889 F.2d 1543, 1547 (6th Cir. 1989) (finding that expert's testimony that "certain behavior by defendant officers amounts to negligence under the law" was an improper legal conclusion); *Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 709-10 (2nd Cir. 1989) (deeming expert's testimony that "the railroad was negligent" inadmissible); *Hermitage Indus. v. Schwerman Trucking Co.*, 814 F. Supp. 484, 487 (D.S.C. 1993) ("[T]he Court finds that the proffered testimony of defendant's expert witness that plaintiff was 'negligent' constitutes a legal conclusion and is therefore inadmissible."); *Pless v. Cleveland Wrecking Co.*, No. 01-CV-0792(Sr), 2006 WL 2690074, at *3 (W.D.N.Y. Sept. 18, 2006) ("[A]n expert may not testify that a defendant . . . was negligent."); Miller, *supra*, § 704.206; 4 *Weinstein's Federal Evidence*, *supra*, § 704.04[1].

As for Deimling's remaining opinions, Superior argues that "[i]f an expert witness cannot testify to the relevant standard of care in the industry . . . then the use of expert testimony might as well be banned altogether." (Resp. Br. 10.) Indeed, experts are generally permitted to testify to the relevant standards of care in a particular industry. *See, e.g.*, *Pless*, 2006 WL 2690074, at *3 ("An expert may testify concerning the ordinary practices within an industry so as to enable the jury to evaluate a defendant's conduct against the standards of accepted practice."); Miller, *supra*, § 704.206 ("[A] properly qualified witness may be permitted to testify to standards of practice within a field"). However, opinion numbers four through seven do not pertain to the

17

standard of care an insurance broker owes to an insured; instead, these opinions leap to the conclusion that Sky's behavior did not conform to some unspecified standard of care.

Moreover, Deimling's opinions suggest that Sky's behavior failed to conform to the *legal* standard of care, not the *insurance industry*'s standard of care, as the opinions are couched in legal terminology. Specifically, Deimling concludes that Sky failed to meet "the duties" of an insurance broker, "breached its duties" to OmniSource, "failed to procure" insurance, and "failed to advise" OmniSource. *See, e.g.*, *Court View Centre*, 753 N.E.2d at 87 (noting that "[a]n insurance agent who . . . procure[s] insurance for another . . . owes the insured a . . . duty . . . ."); *Am. Family Mut. Ins. Co. v. Dye*, 634 N.E.2d at 848 (discussing the duty of an insurance agent to advise an insured); 14 Robert Michael Ey, *Causes of Action* 881 (detailing the cause of action for "failure to procure" insurance); Gary Knapp, Annotation, *Liability of Insurer or Agent of Insurer for Failure to Advise Insured as to Coverage Needs*, 88 A.L.R. 4th 249 (1991) (discussing tort liability for a broker's "failure to advise" insured).

Because these terms have a specific meaning in tort law, Deimling's opinions are legal conclusions. *See United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006) (opining that testimony can be excluded as an improper legal conclusion when "the terms used by the witness have a separate, distinct and specialized meaning in the law . . . .") (quoting *United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002))); *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1212 (D.C. Cir. 1997); *Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997); Wright & Gold, *supra*, § 6284 (noting that witness can "avoid[] the problem [of inadmissibility] where the witness employs language that does not have a specific meaning under the law applicable to the case"); 4 *Weinstein's Federal Evidence*, *supra*, § 704.04[1] ("[A]n expert's

18

testimony that uses words that do not have specialized legal meaning is more likely to be admissible.").

In sum, because opinion numbers two through seven are impermissible legal conclusions, Deimling's testimony at trial regarding these specific opinions will be precluded, and they will be stricken for purposes of summary judgment.

## IV. CONCLUSION

Because Superior fails to carry its burden of demonstrating that Deimling's opinions are reliable and relevant, the motions of U.S. Fire (Docket # 72) and Sky (Docket # 77) to bar Deimling's testimony is GRANTED. Accordingly, Deimling's expert report and deposition testimony is stricken and will not be considered for purposes of the pending motions for summary judgment.

SO ORDERED.

Enter for June 25, 2007.

                                        S/Roger B. Cosbey
                                        Roger B. Cosbey,
                                        United States Magistrate Judge